**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.:  25-CR-20117-CMA**

UNITED STATES OF AMERICA,

v.

SURESH GAJWANI,

Defendant.

_____/

**DEFENDANT SURESH GAJWANI'S SENTENCING MEMORANDUM**
**AND REQUEST FOR DOWNWARD VARIANCE**

Comes now the defendant, Suresh Gajwani, by and through undersigned counsel and pursuant to Rule 32 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 3553, and files this Memorandum in Aid of Sentencing and Request for Downward Variance.

Mr. Gajwani respectfully requests a downward variance to a one-year term of probation.  The reasons for this request are well-founded.

**INTRODUCTION**

This case does not define Suresh Gajwani. He is an exceptional man who has worked tirelessly to support his family for decades. Mr. Gajwani has been married to his wife for over 55 years, and together they have three adult children and nine grandchildren. On the date of his sentencing, Mr. Gajwani turns 79 years old. Mr. Gajwani recognizes the damage that his actions caused the government and his family. He deeply regrets the

conduct that brings him before the Court, and he asks the Court for forgiveness and leniency.

Mr. Gajwani is a first-time offender.  He has accepted responsibility for his conduct, and restitution has been paid in full.[1] Mr. Gajwani's advisory guidelines range is in Zone B. And, notably, Mr. Gajwani has led an otherwise law-abiding life. Thus, a sentence of probation is appropriate.

Mr. Gajwani was born and raised in India. Mr. Gajwani had an impressive career, co-owning a successful small business in Miami from 1983 until 2008. His company manufactured and installed commercial parking and security systems worldwide, where many of his loyal employees worked with him for many years. Mr. Gajwani ultimately sold the business to one of his employees.

More remarkable than his career is his philanthropy. After Mr. Gajwani's mother passed away approximately nine years ago, he took responsibility for, and expanded, several schools his mother operated in India. Notwithstanding his significant medical setbacks, described below, Mr. Gajwani continues to travel to India to honor his mother's legacy and continue to help those less fortunate.

A few years into his retirement, Mr. Gajwani began suffering significant medical

---

[1] The Internal Revenue Service alerted Mr. Gajwani, through counsel, that it erroneously issued a refund check for the restitution. The defendant will not cash the check and will work with the IRS to ensure proper application.

setbacks.[2] In 2012, he was diagnosed with stage 4 kidney cancer. His prognosis was grim. The cancer had spread. Doctors gave Mr. Gajwani 6 to 12 months to live and told him to get his affairs in order. That is when Mr. Gajwani's children sprung into action and found a clinical trial through Johns Hopkins University to treat his late-stage cancer. The clinical trial was to test the efficacy of the cancer drug now known as Opdivo. Mr. Gajwani enrolled in the trial in 2013. Although Mr. Gajwani responded well to Opdivo, in 2017, doctors discovered that his cancer metastasized to his brain. This led to Mr. Gajwani's first brain surgery, in which doctors used gamma knife radiation to remove the tumors.

Mr. Gajwani's health was stable for the next several years; however, in December 2022, he fainted and hit his head resulting in a brain hemorrhage and paralysis. He underwent brain surgery as a result. The following month the brain hemorrhage recurred, which required a second brain surgery. Two months later, in March 2023, Mr. Gajwani had two additional brain surgeries. The first was to again address the recurrence of the brain hemorrhage. This surgery failed. The second procedure was a craniotomy and MMA embolization, which succeeded.

According to medical records from Stanford, in October 2023, Mr. Gajwani's medical team first noted his forgetfulness. In June 2024, psychologist Dr. Barry Crown, evaluated Mr. Gajwani and suspected that he was suffering from the early stages of dementia. Dr. Crown referred Mr. Gajwani for a resting state MRI brain scan. The imaging

---

[2] Undersigned counsel does not believe Mr. Gajwani's medical history is in dispute; nevertheless, the undersigned will bring underlying medical records to sentencing should any questions arise.

showed irregularities, which confirmed Dr. Crown's suspicion that Mr. Gajwani had early-stage dementia, likely beginning many years ago. Mr. Gajwani is currently under the care of medical professionals at Stanford for cognitive decline.

It can be easy for a defendant to appear one-dimensional when seen only through the lens of offense conduct. But Mr. Gajwani is so much more—he is a father, grandfather, brother, philanthropist, cancer survivor, and friend to many. Probation is an appropriate sentence.

**THE SENTENCING PROCESS**

As this Court is already aware, a district court must fashion a sentence that is **"sufficient, but not greater than necessary,"** to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public. *See* 18 U.S.C. § 3553(a) (emphasis added). In arriving at its sentence, a district court must consider (1) the nature and circumstances of the offense and the characteristics of the defendant, (2) the purposes of federal sentencing, (3) the kinds of sentences available, (4) the sentencing guideline range, (5) the pertinent policy statements of the Sentencing Commission, (6) the need to avoid sentencing disparities among similarly situated defendants, and (7) any need for restitution to victims. *Id*.

The point of considering all of these sentencing factors in every case is to reach an individualized sentence for each individual. Indeed, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes

mitigate, sometimes magnify, the crime and the punishment to ensue." *Concepcion v. United States*, 597 U.S. 481, 492 (2022) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). Simply stated, "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487–88 (2011) (citation and internal quotation marks omitted).

In crafting an appropriate sentence, a district court must calculate the correct guidelines range, consider the other 3553(a) factors, and make "an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The weight given to each 3553(a) factor is a matter committed to the discretion of the Court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). And the Court is free to "attach great weight to one factor over others." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (citation and internal quotation marks omitted).

Although the sentencing guidelines must be considered in arriving at a sentence, 18 U.S.C. § 3553(a)(4), the guidelines range is *advisory*, not mandatory. *See United States v. Rodriguez*, 75 F.4th 1231, 1241 (11th Cir. 2023) (treating the guidelines as mandatory is procedural error).  Further, there is *no presumption* that a sentence within the guidelines range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."). "[A] district court is free to vary from [the guidelines] if the court believes that the guidelines range does not properly reflect the § 3553(a) factors in a given case." *United States v. Focia*, 869 F.3d 1269, 1288 (11th Cir. 2017).  A sentence outside the

guidelines range need not be justified by extraordinary circumstances. *Gall*, 552 U.S. at 47.

### Sentencing Guidelines Offense Level and Sentencing Range[3]

Although the 3553(a) factors begin with the nature and circumstances of the offense, we will begin where the Court does at sentencing, with the guidelines range.  The plea agreement contemplates the following calculation:

| | |
|---|---|
| 24 | **Level from §2T4.1 (Tax Table) – Tax loss greater than $3.5 million but not more than $9.5 million** |
| -3 | **Acceptance of Responsibility (U.S.S.G. § 3E1.1)** |
| -2 | **Zero Point Offender Reduction (U.S.S.G. § 4C1.1)** |
| 19 | **Offense Level** |
| -9 | **USAO's recommended downward departure based on mental condition (5H1.3), physical condition (5H1.4), and age (5H1.1)** |
| 10 | **Total Offense Level** |

Because Mr. Gajwani's criminal history category is I (with <u>zero</u> points), this results in an advisory guidelines range in Zone B of 6 to 12 months' imprisonment.

### REQUEST FOR DOWNWARD VARIANCE

Mr. Gajwani respectfully requests a downward variance to a term of probation for one year.  "[A] federal judge in deciding to impose a sentence may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [s]he may

---

[3] As of the date of this filing, and given the expedited nature of the sentencing, undersigned counsel has not yet received a copy of the Presentence Investigation Report; thus, the undersigned references the guidelines computation contemplated in the plea agreement.

consider, or the source from which it may come." *Concepcion v. United States*, 597 U.S. 481, 492 (2022) (citation and internal quotation marks omitted).

Mr. Gajwani accepts complete responsibility for his actions. Restitution has been satisfied, he has cooperated with the government, and he presents no risk of recidivism. Thus, there is no need for further punishment beyond one year of probation.

**A. History and Characteristics of Mr. Gajwani**

1. <u>Background</u>

Mr. Gajwani turns 79 years old on the date of his sentencing. He has been married to his wife for more than 55 years. Together, they raised three incredible children, all of whom are successful and close with their parents. Mr. Gajwani and his wife also have nine wonderful grandchildren. In addition, Mr. Gajwani has a brother and a younger sister who sadly, earlier this year, passed away from complications from advanced dementia.

Mr. Gajwani was born and raised in India. In approximately 1983, Mr. Gajwani helped create Amtel Security Systems in Miami, Florida. Amtel was a small business that manufactured and installed commercial parking and security systems worldwide. Amtel employed approximately a dozen employees at any one time. Many of his employees were long-serving and loyal because Mr. Gajwani cared for them as he did for others throughout his life. Mr. Gajwani operated the company until he retired in approximately 2008. When he retired, Mr. Gajwani sold his business to one of his employees.

The character letters submitted demonstrate the love and admiration of those who

know Mr. Gajwani best.[4] His oldest child describes him as "selfless" and "thoughtful," remembering growing up with a "parade of friends and visitors who needed a place to stay."

Beyond his children, his son and daughters-in-law all consider Mr. Gajwani their dad. It is easy to see why. One of his daughters-in-law remembers when her daughter was four years old and hospitalized for nearly a month due to a ruptured appendix:

> It was one of the hardest times in our lives. Dad stayed over in the hospital many nights to give me a chance to go home and rest. He read to her, made her laugh, explained cartoons, told her stories, and held the room with a calm, loving presence. I honestly can't help but cry as I write this, because of the kind of man he is and how much I love him.

Mr. Gajwani's other daughter-in-law shared his "profound and steady presence" on her life. She recalled having "long phone calls with him where he would share his ideas and wisdom on how I should handle various professional issues or problems I was facing at work." She also remembers that even after Mr. Gajwani was told that he had a short time to live, "the first thing he did was fly across the country to San Francisco to help me and my husband with our newborn twins." Perhaps his daughter-in-law sums up Mr. Gajwani's character the best when she describes him as "a compassionate, generous and deeply good person."

Mr. Gajwani has served as a role model for his family, both immediate and extended. The humanity he has shown throughout his life towards others is commendable.

---

[4] Contemporaneous with this filing, undersigned counsel will provide copies of the character letters directly to the Court, the government, and Probation.

2.  <u>Mr. Gajwani's charity throughout the world is notable.</u>

Mr. Gajwani has dedicated a significant portion of his time and energy trying to make the world a better place.  In India, Mr. Gajwani's parents established a school for the poor, where today over 1,000 children receive an education. Mr. Gajwani's parents also opened several vocational colleges and founded a hostel for women who were working but could not afford housing. After Mr. Gajwani's parents passed away, he took the lead when it came to continuing his parents' philanthropy.

His youngest son shared a memory from when Mr. Gajwani was undergoing cancer treatment but still insisted on caring for his ailing mother and overseeing her charitable projects, which included a school, a women's shelter, and a hospital in an underserved community:

> I recall on at least one occasion, he traveled from India to New York for 18 hours, drove 3 hours to Baltimore, received the infusion, drove 3 hours back to New York, and traveled 18 hours back to the Indian village to continue his charitable work. It was his belief that meaningful work and purpose deserves one's fullest commitment and energy, as well as loyalty and dedication towards his mother and supporting her legacy.

Mr. Gajwani's brother shared a similar memory:

> He has tirelessly worked spending at least 4-6 hours every day on this focus. So much so that even when he was battling cancer and had to have a treatment every 21 days, he would fly into the US for one day, get his treatment and fly back at night. He did this for quite some time – maybe over a year.

For Mr. Gajwani, community service was never about writing a check. His parents taught him that life requires showing up and that community service was about active, hands-on participation. Even a life-threatening cancer diagnosis did not stop Mr. Gajwani

from showing up to help. He continued to make repeated trips to his home village in India to help manage the schools and other charities that his mother started, while flying home to receive cancer treatments.

Closer to home, Mr. Gajwani instills the importance of service to others in his grandchildren by showing them the importance of helping others. Mr. Gajwani regularly invites his local grandchildren over on Sundays to prepare and handout sandwiches to the homeless. Mr. Gajwani never sought recognition for his charity; he simply wanted to help others.

3. A sentence of probation is appropriate given Mr. Gajwani's health.

Mr. Gajwani's medical history is significant. Over the past 13 years, Mr. Gajwani has persevered through four instances of cancer and multiple subsequent brain surgeries. More recently, Mr. Gajwani's health care providers documented a cognitive decline consistent with early-stage dementia, with further brain imaging scheduled. His youngest son succinctly summarized his father's medical challenges in his letter to the Court:

> My father will turn 79 on the day of this sentencing. Since he was 68, he's faced 4 bouts of cancer in his kidney and brain, and has endured multiple debilitating falls, causing brain hematomas. Physically, these diseases and injuries have impaired his mobility and fitness. Mentally, I've observed early signs of cognitive decline: moments of confusion, occasional disorientation and forgetfulness, and sometimes slurring his words. His doctor's core advice to him has been to "use it or lose it", and so I hope that whatever the sentence, it affords him the ability to maintain physical, mental, and social interactivity, to preserve and extend his health as best as one can.

Mr. Gajwani's medical providers have advised him that while there is no cure for dementia, regular physical, social, and mentally stimulating activities can slow the

progression. Currently, Mr. Gajwani tries to maintain an active lifestyle. According to his daughter-in-law, despite ongoing health issues, Mr. Gajwani "insists on getting 10,000 steps a day, even if it means walking loops around Target when the California evenings get too cold." He also participates in a bridge club three times per week at the Indian Community Center near his home. Moreover, Mr. Gajwani spends time with his children and grandchildren and takes his youngest grandchild to a local farmers market every Sunday morning.

A sentence of probation would allow Mr. Gajwani to remain active and engaged in his local community, which is important to his overall health and well-being.

## B. Age of the Offense Conduct

The Factual Proffer accurately describes the offense conduct in this case. (ECF No. 17). Without question, it is serious. It is also from over 5 years ago. Although the age of the offense does not excuse the conduct, it is a relevant consideration when fashioning an appropriate sentence. In particular, the age of the conduct speaks to the need for specific deterrence or, in this case, the lack thereof. Mr. Gajwani does not require incarceration in a facility or his home to be deterred from future misconduct. He lived a law-abiding life prior to this offense, and he has lived one ever since.

## C. Mr. Gajwani does not pose a risk of re-offending or a danger to the community.

Mr. Gajwani will not re-offend. This offense was an isolated one. Mr. Gajwani has not engaged in a pattern of misconduct over multiple years; rather, on one occasion, he signed an IRS form under penalties of perjury that was not true as to every material matter,

11

and for which he has accepted full responsibility. Again, the isolated nature of the offense is not an excuse, but it is relevant when considering whether Mr. Gajwani poses a risk of re-offending. He does not.

### D. The Need for Restitution

The restitution obligation of $15,350,215.95 has been fully satisfied in this case. Mr. Gajwani asks the Court to consider the prompt satisfaction of restitution when fashioning an appropriate sentence.

## CONCLUSION

For the foregoing reasons, Mr. Gajwani respectfully requests that the Court impose a sentence of one year of probation.

Dated:  August 12, 2025                    Respectfully submitted,

_/s/ Tino M. Lisella_
Tino M. Lisella
Fla. Bar No. 0044510
CARLTON FIELDS, P.A.
525 Okeechobee Blvd, Suite 1200
West Palm Beach, FL 33401
Tel:  (305) 539-7223
Fax:  (561) 659-7368
E-mail:  tlisella@carltonfields.com
**_Counsel for Suresh Gajwani_**

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2025, I filed the foregoing via the Court's

CM/ECF system, which will send an electronic copy of the foregoing and a notice of filing

same to all counsel of record as noted below:

Michael Berger
Assistant United States Attorney


*/s/ Tino M. Lisella*
Tino M. Lisella